ORIGINAL

# In the United States Court of Federal Claims

No. 17-587C
(Filed January 31, 2018)
NOT FOR PUBLICATION

**FILED**

JAN 3 1 2018

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * *
                                 *
                                 *
JEREMY MARQUISE CARTER,          *
                                 *
            Plaintiff,           *
                                 *
     v.                          *
                                 *
THE UNITED STATES,               *
                                 *
            Defendant.           *
                                 *
                                 *
* * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

Before the Court is the government's motion to dismiss this action in which plaintiff, Jeremy Marquise Carter, seeks compensation for his submission of an idea for increasing productivity at a jailhouse furniture-production shop. Because of Mr. Carter's status as a *pro se* plaintiff, the Court liberally construes the allegations in Mr. Carter's complaint. *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980); *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005). For the reasons discussed below, the Court **GRANTS** the government's motion to dismiss Mr. Carter's takings, unjust enrichment, conversion, and unpaid wages claims. But the Court **DENIES** the government's motion to dismiss Mr. Carter's breach of contract claim against the United States.

## I. BACKGROUND

Mister Carter is currently incarcerated in federal prison in Estill, South Carolina. Compl. at 9, ECF No. 1. Previously, Mr. Carter was housed at a federal corrections facility at Coleman, Florida. *Id.* ¶¶ 1–2. While at Coleman, Mr. Carter participated in a work program and became a factory management clerk—overseeing operations in the prison's furniture factory. *Id.* ¶¶ 3–7. According to Mr. Carter, he

"worked hundreds of hours off the clock" but was promised by supervisors and prison staff that he would be compensated for those hours. *Id.* ¶¶ 3–4. Mister Carter alleges that he never was paid for those hours. *Id.* ¶ 5.

During his time at the Coleman facility, Mr. Carter noticed "a lot of waste" in the furniture production. *Id.* ¶¶ 6–7. In response, he devised a solution by creating a "formula" that would streamline production and cut down on waste. *Id.* ¶ 8. He named this "The Green Project." *Id.* ¶ 9. In May of 2011, Mr. Carter brought his Green Project to the attention of Messrs. Tad Schnaufner, Bryan Moon, and James Moody—who invited him to implement his idea at the Coleman facility. *Id.* ¶¶ 10, 12. The idea apparently paid off. According to Mr. Carter, the facility "saved more than $317,000.00 during the first two months of its implementation." *Id.* ¶ 26.

Considering its success, Mr. Carter sought compensation under the federal "Ideas for Dollars Program" for devising and implementing the Green Project. *Id.* ¶ 13. According to Mr. Carter, Messrs. Schnaufner, Moon, and Moody "agreed to compensate [Mr. Carter] for his Green Project concept under the Ideas for Dollars Program." *Id.* ¶ 14.[1] Specifically, they allegedly agreed to pay Mr. Carter one percent "of all factory production savings attributed to the initiation of his Green Project concept under the Ideas for Dollars Program." *Id.* ¶ 15.

Mister Carter never received the compensation he anticipated. He asserts that Messrs. Schnaufner, Moon, and Moody misled him by promising him compensation under the Ideas for Dollars program—but that they never meant to pay him. *Id.* ¶ 17. Further, Mr. Carter alleges that they intended not to pay him and then planned to thwart any efforts Mr. Carter made to alert outside agencies about the lack of compensation. *Id.* ¶ 19. Had it not been for the alleged false promise to compensate him for his ideas, Mr. Carter says he would not have disclosed his formula or implemented the Green Project concept. *Id.* ¶¶ 20–21, 25–27.

After learning that he would not be compensated under the Ideas for Dollars Program, Mr. Carter lodged a claim with Federal Prison Industries and Messrs. Dan Moore, Dennis Merrion, and Paul Laird. *Id.* ¶¶ 27–29. According to the complaint, Messrs. Moore, Merrion, and Laird instructed Mr. Moon to pay Mr.

---

[1] Exactly what, if any, authority Messrs. Schnaufner, Moon, and Moody had to promise such payments to Mr. Carter is not made clear by the facts alleged in the complaint or other submissions.

Carter per the Ideas for Dollars Program. *Id.* ¶ 30.[2] In response, Messrs. Schnaufner and Moon chastised Mr. Carter for formally complaining about his lack of compensation, saying that he was a "snitch" who "could no longer be trusted as a [factory] clerk." *Id.* ¶¶ 31–33, 35–38. Mister Schnaufner then allegedly ordered Mr. Carter "to destroy all documents that mention the Green Project and that could later be read by Washington officials." *Id.* ¶ 34. Despite the continued use of the Green Project system, saving "approximately $290,000.00 per month," Mr. Carter has not been compensated. *Id.* ¶¶ 40–44.

After lodging a number of other administrative grievances and complaints, Mr. Carter sought review before the Bureau of Prisons. *Carter v. Moon*, No. 12-269, slip op. at 4–5 (M.D. Fla. Mar. 18, 2015), ECF No. 56. Mister Carter also filed an action with the Equal Employment Opportunity Commission (EEOC). *Id.* at 6. Later, Mr. Carter took his case to the United States District Court for the Middle District of Florida. *Moon*, slip op. at 1. In the district court, Mr. Carter asserted numerous state and federal claims. *Id.* His complaint included discrimination-based claims, but also the claims alleged here—including that the government breached its contractual obligation by failing to compensate him for implementing the Green Project and took his property. *Id.* at 13. Because Mr. Carter's alleged damages exceeded $10,000, the district court dismissed his contract and takings claims—finding that this court has exclusive jurisdiction over such cases under the Tucker Act. *Id.* at 13–14.

The district court also dismissed most of Mr. Carter's claims for failure to state a claim, but found that Mr. Carter had sufficiently pled others. *See id.* at 24 (listing the counts that the district court dismissed). All of the claims were eventually dismissed because the parties reached a settlement. Order, *Carter v. Moon*, No. 12-269 (M.D. Fla. July 27, 2015), ECF No. 87. The settlement agreement stated the parties agreed "to settle and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise" to the district court case. Motion to Dismiss at Exhibit 2, ¶ 1, (Def.'s Mot.), ECF No. 6. But the agreement seemed to limit its reach by stating that it was "entered into by all parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation." *Id.* ¶ 4. Thus, Mr. Carter argues that the settlement agreement does not bar him from bringing a suit under the Tucker Act in this court.

---

[2] The exact nature of the oversight role Messrs. Moore, Merrion, and Laird played is not made clear in the factual allegations put forward in the complaint.

*See generally* Plaintiff's Response in Opposition to United States' Motion to Dismiss, (Pl.'s Opp'n), ECF No. 8.

In addition to his case in the federal district court, Mr. Carter previously filed an action with our court. *See generally* Complaint, *Carter v. United States*, No. 15-627C (Fed. Cl. June 18, 2015), ECF No. 1. At the time, however, Mr. Carter's claims before the federal district court were still pending. After noting that both cases relied "on the same body of operative facts," our court dismissed his claims for lack of jurisdiction due to the pendency of the district court litigation when the case was filed here. Order, *Carter v. United States*, 15-627C (Fed. Cl. July 13, 2016) (citing *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011)), ECF No. 23. His district court case now being concluded, Mr. Carter again brings his claims here. He asserts a breach of contract, appropriation of his property without just compensation, unjust enrichment, conversion, and failure to compensate him for work done. Compl. ¶¶ 51–55. Mister Carter demands a jury trial and damages of $500,250. *Id.* ¶¶ 57–58.

## II. DISCUSSION

The government maintains that this case must be dismissed under Rules 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims (RCFC) for lack of jurisdiction and failure to state a claim, respectively. Def.'s Mot. at 1. Regarding a lack of jurisdiction, this Court must dismiss claims that do not fall within its subject-matter jurisdiction. *See* RCFC 12(b)(1). "When considering a motion to dismiss a case for lack of subject-matter jurisdiction, courts will accept as true all factual allegations the non-movant made and draw all reasonable inferences in the light most favorable to that party." *Stanwyck v. United States*, 127 Fed. Cl. 308, 311–12 (2016) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). It is incumbent on the plaintiff to properly invoke the court's jurisdiction by establishing either a breach of contract by the federal government or identifying "a money-mandating law which was allegedly violated by the federal government." *Id.* at 312 (citing *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983)). A plaintiff's *pro se* status does not relieve him of the obligation to demonstrate jurisdiction by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) (explaining the plaintiff's responsibility for showing that the claim falls within the court's jurisdiction); *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995) (noting that a plaintiff's status does not excuse defects in the complaint); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (stating that the burden of proof for establishing jurisdiction is by a preponderance of the evidence). While extrinsic evidence generally is not considered at the motion to dismiss stage of the proceeding, "if subject-matter

jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Thus, to the extent that they become relevant in determining this Court's jurisdiction, the Court may consider the federal district court's decision and the settlement agreement.

Likewise, the plaintiff must present a valid claim on which the Court can grant relief. *See* RCFC 12(b)(6). "When considering a motion to dismiss a case for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court accepts all well-pled facts as true and draws all reasonable inferences in plaintiff's favor." *Silver Buckle Mines, Inc. v. United States*, 117 Fed. Cl. 786, 791 (2014) (citing *Scheuer*, 416 U.S. at 236; *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002); *Englewood Terrace Ltd. P'ship v. United States*, 61 Fed. Cl. 583, 584 (2004)). Granting a motion to dismiss a case for failure to state a claim "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). Denial of the motion is warranted when the complaint presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## A. Threshold Matters

### *1. Defects in the Complaint*

Before proceeding, there are two minor defects in Mr. Carter's complaint. Neither defect, however, precludes further consideration of this case. First, Mr. Carter has made a demand for a jury trial. Compl. ¶ 58. The rules of this court, however, make no provision for jury trials. *See* RCFC 38 and 39. Because this court is an Article I court, the right to a jury trial under the Seventh Amendment does not apply. *Rohland v. United States*, No. 17-1175C, 2017 WL 4562562, at *2 (Fed. Cl. Oct. 12, 2017). Indeed, by filing a complaint with this court, a plaintiff "waives the right to a jury trial." *Id.* (quoting *Arunga v. United States*, 465 F. App'x 966, 967 n.2 (2012)). Therefore, Mr. Carter's demand for a jury trial must be **DENIED**.

A further defect in Mr. Carter's complaint is that Mr. Carter names as defendants several individuals and the Federal Prison Industries corporation. *See* Compl. ¶ 57 (seeking compensation from Federal Prison Industries and from Messrs. Schnaufner, Moon, Moody, Merrion, Moore, and Laird). This court, however, only has jurisdiction over claims against the United States. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to

render judgment upon any claim against the United States . . . ."). Simply put, the United States is the only proper defendant in an action before this court. *Eden Isle Marina, Inc. v. United States*, 113 Fed. Cl. 372, 464 n.128 (2013). Even if an individual defendant is an officer or agent of the United States, this court still cannot adjudicate a claim against that individual. *Stephenson v. United States*, 58 Fed. Cl. 186, 190 (2003).[3] Thus, the claims Mr. Carter makes against all parties other than the United States are **DISMISSED** for lack of jurisdiction.

### 2. *Exhaustion of Administrative Remedies*

The government argues that Mr. Carter's complaint should be dismissed outright because he failed to exhaust administrative remedies. Def.'s Mot. at 6–7. Asserting a failure to exhaust per statutory requirements is a challenge to this court's jurisdiction to hear the claim. *Hawpe Constr., Inc. v. United States*, 46 Fed. Cl. 571, 576 (2000) (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)); *see also* Def.'s Mot. at 7 (noting that the exhaustion requirement is jurisdictional). Thus, the Court "may look beyond the pleadings and 'inquire into jurisdictional facts' to determine whether jurisdiction exists." *BRC Lease Co. v. United States*, 93 Fed. Cl. 67, 71 (2010) (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)); *see also Arbaugh*, 546 U.S. at 514.

The government asserts that Mr. Carter did not follow the three-tiered administrative remedy structure of the Prison Litigation Reform Act, 42 U.S.C. § 1997e, (PLRA) by first seeking informal resolution, then a formal administrative remedy request, and finally review by the Bureau of Prisons. Def.'s Mot. at 7. It appears from the district court opinion, however, that the exhaustion requirement has been met.

First, Mr. Carter tried to resolve the issues presented here by inquiring with Mr. Moon about compensation. *Moon*, slip op. at 2. After that proved unsuccessful, Mr. Carter filed an "Informal Resolution Form" regarding the denial of compensation. *Id.* at 4. Following that, it appears that Mr. Moon retaliated against Mr. Carter— necessitating numerous appeals. *Id.* at 4–5. Finally, Mr. Carter had to appeal to the Bureau of Prisons to resolve the retaliation issues. *Id.* at 5. Mister Carter also filed a complaint with the EEOC. *Id.* at 6. Given that Mr. Carter did in fact initiate a claim through the administrate process, the Court concludes that he exhausted administrative remedies.

---

[3] While private parties may intervene as defendants in cases falling within this court's bid-protest jurisdiction per 28 U.S.C. § 1491(b)(5), this is not such a case.

The Court also notes that the government did not raise this exhaustion argument before the district court, although Mr. Carter has asserted nearly the exact same claims in both courts.[4] Because the government did not believe that Mr. Carter's alleged failure to exhaust administrative remedies precluded the district court's review, this Court could also find the exhaustion defense waived. *See Casanova v. Dubois*, 304 F.3d 75, 77 n.3 (1st Cir. 2002) (explaining how the majority of circuits read the PLRA's exhaustion requirement as an affirmative defense that is subject to waiver, estoppel, and equitable tolling); *McClure v. Chen*, 246 F. Supp. 3d 1286, 1291 (E.D. Cal. 2017) ("The PLRA exhaustion requirement creates an affirmative defense, and defendants bear the burden of raising and proving the absence of exhaustion."). Thus, the Court shall proceed to review the remaining grounds for dismissing Mr. Carter's complaint.

## B. Breach of Contract Claim

Mister Carter first asserts that the government reneged on its agreement to compensate him for his time and effort in devising and implementing the Green Project. Compl. ¶ 51. The government makes two arguments in response. First, it posits that Mr. Carter's claims are precluded by the terms of the settlement agreement reached in the district court litigation. Def.'s Mot. at 2. On the merits of the contract claim, the government argues that "the ideas for dollars program is nothing more than an illusory promise"—precluding relief for Mr. Carter. *Id.* at 7–9. Because Mr. Carter asserts the existence of a contract with the United States under 28 U.S.C. § 1491(a)(1) and because such arguments are not obviously frivolous, the Court shall proceed to review whether Mr. Carter has stated a claim under RCFC 12(b)(6).

### *1. Impact of the Prior Settlement*

Before the district court, Mr. Carter and the government entered into a settlement agreement. *See generally* Def.'s Mot. at Exhibit 2. The agreement opened with a provision reciting that the parties "agree to settle and compromise *each and every claim of any kind,* whether known or unknown, arising directly or indirectly from the acts or omissions" which gave rise to the district court litigation. *Id.* ¶ 1 (emphasis added). The government argues that the agreement's "each and every claim of any kind" language precludes Mr. Carter from bringing this case. Def.'s Mot. at 5. Mister Carter, meanwhile, points to a separate provision of the settlement agreement which states that, "This settlement is entered into by all

---

[4] *See* Def.'s Mot. at 5 (arguing that the claims Mr. Carter asserts here "are the same as those he asserted" in the district court).

parties for the purpose of *compromising disputed claims under the Federal Tort Claims Act* and avoiding the expenses and risks of further litigation." Def.'s Mot. at Exhibit 2, ¶ 4 (emphasis added). Further, Mr. Carter asserts that during settlement negotiations, he was assured by the government's attorney that the settlement agreement only applied to Federal Tort Claims Act (FTCA) claims before district court and would not prevent him from bringing claims in this court under the Tucker Act. Pl.'s Opp'n ¶¶ 3–4; Pl.'s Sur-Reply ¶¶ 2–3, ECF No. 11.

The government replies by contending that the settlement agreement was a complete and integrated contract precluding parol evidence. Defendant's Reply at 3, ECF No. 9. As for the language appearing to limit the settlement agreement to FTCA claims, the government goes to great lengths to argue that the whole agreement itself is much broader—encompassing the Tucker Act claims. *Id.* at 1–3. Indeed, the government devotes most of its reply brief to support the proposition that the agreement settled any claim arising out of the events surrounding Mr. Carter's creation of the Green Project. *See generally id.*

The problem with the government's argument is that the precise effect of a settlement agreement, as a subset of claim preclusion, is normally a matter for an RCFC 12(b)(6) dismissal. *See Chisolm v. United States*, 82 Fed. Cl. 185, 193 (2008). The government tries to place this under the ambit of RCFC 12(b)(1), by arguing that it is frivolous to contend that the settlement agreement did not cover the claims Mr. Carter brings here. Def.'s Mot. at 4–6. But the language Mr. Carter points to in the agreement appears to preserve non-FTCA claims, and thus his contention is not frivolous. While the interpretation of a contract is a question of law, and thus potentially a matter for a motion to dismiss a claim under RCFC 12(b)(6), in this case it would require considering matters outside of the complaint. *See Evanston Ins. Co. v. Gaddis Corp.*, 145 F. Supp. 3d 1140, 1145 (S.D. Fla. 2015) ("Generally, courts disfavor resolving issues involving contract interpretation at the motion to dismiss stage."); *Geter v. Galardi S. Enters., Inc.*, 43 F. Supp. 3d 1322, 1328 (S.D. Fla. 2014) ("The Court 'may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.'" (citation omitted)). The government suggests that judicial notice of the settlement agreement would be appropriate. Def.'s Mot. at 5 n.1. But more than mere notice is called for, and the Court finds that interpreting this agreement might entail considering such matters as whether factual allegations associated with claims dismissed as outside a court's jurisdiction may be considered among the acts complained of in a settled case. As a consequence, the question is more appropriate

for a summary judgment proceeding.[5]  For now, the settlement-agreement issue will not preclude Mr. Carter's contract claims under the Tucker Act.

### 2. Whether a Contract Existed

Mister Carter essentially argues that a binding, implied-in-fact contract formed between him and the United States because of the alleged promise by Messrs. Schnaufner, Moon, and Moody to compensate him. *See* Pl.'s Opp'n ¶ 10 (asserting that the elements of an implied-in-fact contract are met).  The government posits that Mr. Carter's contract claim should be dismissed outright because the Ideas for Dollars Program is nothing more than an illusory promise. Def.'s Mot. at 7–9.  Under the program, "the decision to award is discretionary." *Id.* at 8; *see also* 28 C.F.R. § 345.72 (providing that "[a]n inmate worker *may* receive a cash bonus or cash award" (emphasis added)).  Thus, according to the government, the only promise made to Mr. Carter was to consider giving him an award for a money-saving idea. Def.'s Mot. at 8.

The government's illusory promise argument, however, completely misses the thrust of Mr. Carter's allegation. He is not claiming that a binding contract formed between him and the United States because he submitted something to the Ideas for Dollars Program. Instead, he alleges that Messrs. Schnaufner, Moon, and Moody agreed to compensate him for savings attributed to his Green Project idea. Compl. ¶ 15. The Ideas for Dollars Program was merely the vehicle by which Messrs. Schnaufner, Moon, and Moody would purportedly compensate Mr. Carter for implementing the Green Project. Compl. ¶ 15. In short, Mr. Carter has claimed that a contract arose based on the alleged promise of Messrs. Schnaufner, Moon, and Moody. *See id.*; Pl.'s Opp'n ¶ 11. Hence, the Court must **DENY** the

---

[5] While the Court could treat the RCFC 12(b)(6) motion as a motion for summary judgment with regard to the proper interpretation of the settlement agreement, such a conversion "should be exercised with great caution and attention to the parties' procedural rights." 5C CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed.) [hereinafter Wright & Miller]; *see also Easter v. United States*, 575 F.3d 1332, 1335 (Fed. Cir. 2009) ("Before the court may convert a motion for judgment on the pleadings into a motion for summary judgment, the court must ordinarily provide notice of its intention to do so."). Without giving both parties notice and opportunity to do more extensive briefing and argument on its proper interpretation, the Court is loath to treat the settlement-agreement issue as a motion for summary judgment on these papers.

government's request to dismiss count one of the complaint, *see* Compl. ¶ 51, as there is no basis for determining that the alleged promise was illusory.

Even though Mr. Carter pleads facts indicating the formation of an agreement between Messrs. Schnaufner, Moon, and Moody, the Court notes that his complaint stops short of alleging a plausible implied-in-fact contract binding on the government. Specifically, Mr. Carter has not pled any facts indicating that Messrs. Schnaufner, Moon, and Moody had the legal authority to bind the United States. Providing facts showing that individual promisors had authority to bind the government is necessary to successfully plead the existence of an implied-in-fact government contract. *See Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003) (explaining how the existence of an implied-in-fact contract requires the plaintiff to show "'actual authority' on the part of the government's representative to bind the government in contract").

But the Court cannot dismiss the claim at this juncture. The government failed to move to dismiss based on the lack of an element in the formation of a contract. Even though it appears an element of a breach-of-contract claim is missing, the court ordinarily may not dismiss a claim *sua sponte* under RCFC 12(b)(6) without giving the plaintiff an opportunity to respond. *See Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1369 (Fed. Cir. 2005) (citing *Oatess v. Sobolevitch*, 914 F.2d 428, 430 n.5 (3d Cir. 1990)); *AAA Pharmacy, Inc. v. United States*, 108 Fed. Cl. 321, 329 n.9 (2012) ("[I]n general, sua sponte Rule 12(b)(6) dismissals are erroneous if parties have not been afforded notice that the complaint insufficiently states a claim and an opportunity to amend the complaint."); *see also Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed. Cir. 2006) (noting that *sua sponte* dismissal under RCFC 12(b)(6) is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").

Further, Mr. Carter is willing to amend his complaint should any defects be found. *See* Pl.'s Opp'n ¶ 12 ("Plaintiff moves this Court for leave to file a First Amended Complaint to better plead his claims . . . ."). Given the complaint's lack of an essential element showing the formation of a valid contract, the Court **GRANTS** Mr. Carter leave to file an amended complaint. *See* RCFC 15(a)(2); *see also Neitzke v. Williams*, 490 U.S. 319, 329 (1989) (explaining that "a plaintiff with an arguable claim is ordinarily accorded . . . an opportunity to amend the complaint before the motion is ruled upon"). This amended complaint should specify the positions Messrs. Schnaufner, Moon, and Moody held and also detail what authority they had to bind the United States in a contract with Mr. Carter.

## C. Takings Claim

Mister Carter also asserts that the government's failure to pay him for his Green Project idea amounts to a taking without just compensation. Compl. ¶ 52. While takings claims do fall within this Court's jurisdiction, *see* 28 U.S.C. § 1491(a)(1), Mr. Carter fails to plead facts sufficient to state a plausible takings claim. Successfully establishing a taking requires the plaintiff to show a property interest that was taken without just compensation. *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 854 (Fed. Cir. 2009).

As an initial matter, Mr. Carter has not alleged a cognizable property interest in his Green Project idea. Mister Carter did not patent his idea and protect it against appropriation by others. Thus, he would not be legally entitled to sole use and control of his idea. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 152–53 (1989) (explaining how others are free to use unpatented ideas); *Palmyra Pac. Seafoods, L.L.C. v. United States*, 561 F.3d 1361, 1364 (Fed. Cir. 2009) ("[T]he plaintiff must point to a protectable property interest that is asserted to be the subject of the taking.").

But even assuming for the purposes of argument that Mr. Carter did possess some kind of property interest in his Green Project idea, there is nothing in his complaint suggesting that it was taken from him by the government. At base, the Takings Clause is meant to prevent the government "from *forcing* some people alone to bear public burdens." *Armstrong v. United States*, 364 U.S. 40, 49 (1960) (emphasis added). As the government points out, Mr. Carter was not forced to give up his idea. Instead, he volunteered it. Def.'s Mot. at 9. And when a plaintiff voluntarily cedes an interest to the government, no taking occurs. *See Norman v. United States*, 429 F.3d 1081, 1088–89 (Fed. Cir. 2005) (finding that a developer's voluntarily setting aside land for wetlands conservation was not a taking). Thus, nothing was coercively taken from Mr. Carter. The government's motion to dismiss count two of the complaint is **GRANTED**. *See* Compl. ¶ 52.

## D. Unjust Enrichment Claim

Mister Carter's unjust enrichment claim, *see* Compl. ¶ 53, is precluded by a lack of jurisdiction. An unjust enrichment claim is an equitable claim, based on the theory of contracts implied-in-law. *Copar Pumice Co. v. United States*, 112 Fed. Cl. 515, 538 (2013). The Tucker Act, however, does not grant this court jurisdiction over implied-in-law contracts. *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1324 (Fed. Cir. 1997) (citing *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996)). Thus, the Tucker Act does not extend our jurisdiction to unjust enrichment claims. *Copar Pumice Co.*, 112 Fed. Cl. at 538. Therefore, Mr. Carter's unjust

enrichment claim must be dismissed for lack of jurisdiction under RCFC 12(b)(1). The government's motion to dismiss count three of the complaint is **GRANTED**. *See* Compl. ¶ 53.

## E. Conversion Claim

Mister Carter also alleges that the government has committed the tort of conversion by taking his Green Project idea for its own use. Compl. ¶ 54. The Tucker Act, however, specifically withholds from this court subject-matter jurisdiction over cases sounding in tort. 28 U.S.C. § 1491(a)(1). As Mr. Carter's conversion claim centers on allegedly tortious conduct, this Court lacks authority to hear the matter. *Vlahakis v. United States*, 215 Ct. Cl. 1018, 1018–19 (1978). Therefore, Mr. Carter's conversion claim must be dismissed for want of jurisdiction per RCFC 12(b)(1). The government's motion to dismiss count four of the complaint is **GRANTED**. *See* Compl. ¶ 54.

## F. Unpaid Wages Claim

Finally, Mr. Carter alleges that he is owed compensation for the time and work that he performed "off the clock." Compl. ¶ 55. As the government points out, however, the major hurdle for this claim is that the district court already determined that non-payment of wages claims do not apply to prisoners. *Moon*, slip op. at 20; Def.'s Mot. at 11. Hence, even assuming that this Court has jurisdiction to hear this issue, the Court would be unable to render a decision without violating the doctrine of collateral estoppel.

The doctrine of collateral estoppel holds "simply that later courts should honor the first actual decision of a matter that has been actually litigated." 18 Wright & Miller § 4416; *see also S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 49 (1897) (extolling the virtues of securing "peace and repose of society by the settlement of matters capable of judicial determination"). It is especially appropriate to preclude the same parties from relitigating claims that were previously decided. *See* Wright & Miller, *supra* ("Once the same parties have litigated the very same issue . . . in the same adversary posture, preclusion prevents the risk of the clearest and most embarrassing inconsistencies and avoids the most direct dangers of burdening court and adversary with mere repetition." (footnote omitted)). Generally, collateral estoppel requires that the issue was actually litigated, decided by the tribunal, and necessary for the judgment. *Id.* §§ 4419–21.

Here, Mr. Carter raised essentially the same claim about non-payment of compensation for time worked. *See* Second Amended Complaint at 7B, *Carter v. Moon*, No. 12-269 (M.D. Fla. Sept. 17, 2013), ECF No. 42. The government, in turn,

responded by arguing that prisoners have no "legal entitlement to payment for their work." *Moon*, slip op. at 20 (citation omitted). The district court then went on to dismiss Mr. Carter's non-payment claims for two reasons. First, the court explained that prisoners have no "substantive entitlement to compensation for their labor" under the Constitution. *Id.* (quoting *Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985)). Second, the court noted that prisoners are not covered by the Fair Labor Standards Act. *Id.* (citing *Tourscher v. McCullough*, 184 F.3d 236, 243 (3d Cir. 1999)).

Given the district court's decision, it appears that all three elements of collateral estoppel are met. The issue was raised by Mr. Carter and actually litigated. The district court then decided that Mr. Carter had no legal basis to raise non-payment claims. And, the district court's decision was necessary in rendering its judgment that the non-payment claims needed to be dismissed. The principles of collateral estoppel, therefore, militate in favor of declining to consider Mr. Carter's non-payment claim. As such, the Court dismisses that claim. The government's motion to dismiss count five of the complaint is **GRANTED**. *See* Compl. ¶ 55.

### III. CONCLUSION

All claims against private defendants are **DISMISSED** for want of jurisdiction. Mister Carter's demand for a jury trial is **DENIED**. *See* Compl. ¶ 58. The government's motion to dismiss the complaint is **GRANTED** with regard to counts two, three, four, and five, *see id.* ¶¶ 52–55, but the motion is **DENIED** as to count one, *see id.* ¶ 51. The Court **GRANTS** Mr. Carter's request for leave to file an amended complaint to cure the defects noted in this opinion regarding his contract claim. *See* Pl.'s Opp'n ¶ 12. Mister Carter shall have until **Monday, March 5, 2018**, to file his amended complaint.

**IT IS SO ORDERED.**

**VICTOR J. WOLSKI**
Judge

- 13 -