NOT FOR PUBLICATION

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| JEREMY MARQUISE CARTER, | ) |
| Plaintiff, | ) |
| v. | ) No. 17-587C |
| THE UNITED STATES, | ) Filed: March 16, 2021 |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Before the Court is the Government's Motion to Dismiss Plaintiff Jeremy Marquise Carter's Amended Complaint, which seeks compensation for his idea to increase efficiency at a jailhouse furniture production shop. Because of Mr. Carter's status as a *pro se* plaintiff, the Court liberally construes the allegations in his complaint. *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980); *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005). For the reasons discussed below, the Court **DENIES** the Government's Motion.

### I. BACKGROUND

At the time Mr. Carter filed his Amended Complaint, he was incarcerated in federal prison in Estill, South Carolina. Am. Compl. ¶ 2, ECF No. 16.[1] Mr. Carter was previously housed at a federal corrections facility at Coleman, Florida. *Id.* ¶ 3. While at Coleman, Mr. Carter participated in a work program and became a factory management clerk, overseeing operations in the prison's furniture factory. *Id.* ¶¶ 4–5.

---

[1] According to the Federal Bureau of Prisons online database of current and former inmates, Mr. Carter was released on October 9, 2020. *Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Mar. 12, 2021).

During his time at the Coleman facility, Mr. Carter alleges that he noticed what he claims was "excessive waste" in furniture production. *Id.* ¶¶ 6–8. In response, he "devised a solution by creating a formula that would streamline production and cut down on waste." *Id.* ¶ 8. He named this idea "The Green Project." *Id.* In May 2011, Mr. Carter brought his Green Project idea to the attention of Factory Manager Tad Schnaufner, Superintendent of Industries ("SOI") Bryan Moon, and Acting Factory Manager James Moody. *Id.* ¶ 9.

Mr. Carter claims he submitted his Green Project proposal in writing through the Federal Prison Industries' ("FPI") incentive awards program, which the parties refer to as the "Ideas for Dollars Program." *Id.* ¶¶ 9, 13. Under the program, an inmate may receive a cash award for ideas that produce a net savings of at least $250. 28 C.F.R. § 345.72. The regulations provide that "[c]ash awards shall be one percent of the net estimated savings during the first year," with a minimum award of $25 and a maximum award of $1,000. *Id.* The inmate's immediate supervisor begins the consideration process by reviewing the inmate's suggestion and then forwarding the idea to the SOI with comments and recommendations. *Id.* § 345.73(a). The SOI designates a committee to further review the idea. *Id.* § 345.73(b). The committee itself can make an award of up to $100 to an inmate whose money-saving proposal was adopted. *Id.* § 345.73(b)(1). If the committee believes that an award exceeding $100 is appropriate, it forwards the recommendation to the Assistant Director for final decision. *Id.*

Mr. Schnaufner was Mr. Carter's immediate supervisor, and Mr. Moon served as the SOI. ECF No. 16 ¶ 14. Mr. Carter contends that, after he submitted his idea, Mr. Moon convened a committee comprised of himself, Mr. Schnaufner, and Mr. Moody. *Id.* ¶ 15. Following their review, Schnaufner, Moon, and Moody allegedly instructed Mr. Carter to implement his proposal

at the Coleman facility. *Id.* ¶ 18. According to Mr. Carter, the idea saved the facility "more than $317,000.00 during the first two months of its implementation." *Id.* ¶ 26.

As compensation for initiating the Green Project, Mr. Carter requested that he receive one percent of the total savings realized by the project. *Id.* ¶ 19. According to Mr. Carter, Schnaufner, Moon, Moody, and three Assistant Directors (Dan Moore, Dennis Merrion, and Paul Laird) agreed to compensate him at a rate of one percent of the total savings from his project. *Id.* ¶ 20. Mr. Carter contends he was instructed by Schnaufner, Moon, and Moody to keep a ledger of the savings. *Id.* ¶ 21. A few months after implementation, Mr. Carter allegedly asked Mr. Moon about monthly compensation. *Id.* ¶ 27. Mr. Carter claims that Mr. Moon then told him he would not receive any payments. *Id.* ¶ 28.

Mr. Carter contends that he complained to Mr. Laird and the two other Assistant Directors, Moore and Merrion, about not receiving the agreed-upon compensation. *Id.* ¶ 30. The Assistant Directors allegedly instructed Mr. Moon to ensure that Mr. Carter received his award. *Id.* ¶ 31. Rather than paying him, however, Mr. Carter asserts that Schnaufner, Moon, and Moody began harassing him for complaining to Laird, Moore, and Merrion and that the alleged harassment and retaliation culminated in Mr. Carter being fired. *Id.* ¶ 32–33.

Mr. Carter alleges he never received compensation. *Id.* ¶ 35. He asserts that Schnaufner, Moon, and Moody misled him by promising him payment under the Ideas for Dollars Program despite never intending to pay him. *Id.* ¶ 39. Had it not been for the alleged false promise to compensate him for his idea, Mr. Carter says he would not have disclosed his formula or implemented the Green Project concept. *Id.* ¶¶ 41–42.

After lodging several administrative grievances and complaints, Mr. Carter sought review before the Bureau of Prisons. Op. at 4–5, *Carter v. Moon*, No. 12-269 (M.D. Fla. Mar. 18, 2015),

ECF No. 56. Later, Mr. Carter took his case to the United States District Court for the Middle District of Florida. *Id.* at 1. In the district court, Mr. Carter asserted numerous state and federal claims, including that the Government breached a contractual obligation by failing to compensate him through the Ideas for Dollars Program after implementing the Green Project. *Id.* at 13. Because Mr. Carter's alleged damages exceeded $10,000, the district court dismissed his contract claim, finding that the Court of Federal Claims has exclusive jurisdiction over such actions under the Tucker Act. *Id.* at 13–14. All other claims were dismissed because the parties reached a settlement. Order, *Carter v. Moon*, No. 12-269 (M.D. Fla. July 27, 2015), ECF No. 87.

Mr. Carter also has made several attempts to obtain relief in this court. He first filed a complaint here in 2015. *See generally* Compl., *Carter v. United States*, No. 15-627C (Fed. Cl. June 18, 2015), ECF No. 1. At the time, however, his claims before the federal district court were still pending. After noting that both actions relied "on the same body of operative facts," the court dismissed his claims for lack of jurisdiction due to the pendency of the district court litigation when the case was filed. Order, *Carter v. United States*, 15-627C (Fed. Cl. July 13, 2016) (Bruggink, J.), ECF No. 23. Mr. Carter filed the present case in May 2017, alleging his breach of contract claim along with several other claims. *See generally* Compl., ECF No. 1. On January 31, 2018, the court dismissed all his claims except for the contract claim. *See Carter v. United States*, No. 17-587C, 2018 WL 651369, at *8 (Fed. Cl. Jan. 31, 2018) (Wolski, J.).[2]

The Government argued that the contract claim should be dismissed because the Ideas for Dollars Program is nothing more than an illusory promise. United States' Mot. to Dismiss at 8, ECF No. 6. Specifically, it said the program allows for "discretionary awards for inmate ideas"

---

[2] This case was reassigned from Judge Wolski to the undersigned on December 21, 2020. Order Reassigning Case, ECF No. 22.

4

and "is not a guarantee of such awards." *Id.* at 7. The only promise made to Mr. Carter, according to the Government, was to consider using his idea. *Id.* at 8 (citing *Ridge Runner Forestry v. Veneman*, 287 F.3d 1058, 1061–62 (Fed. Cir. 2002)). Thus, the Government claimed it had not obligated itself to award anything to Plaintiff. *Id.*

The court, however, declined to dismiss Mr. Carter's contract claim. The court understood Mr. Carter to be alleging the existence of an implied-in-fact contract between Schnaufner, Moon, and Moody—on behalf of the United States—and Mr. Carter. *See* 2018 WL 651369, at *6. It held, however, that Mr. Carter had not sufficiently pled facts showing that Schnaufner, Moon, and Moody had contractual authority to create a binding implied-in-fact contract. *Id.* (citing *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003)). Accordingly, to avoid having his case dismissed for failure to state a claim under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), the court ordered Mr. Carter to file an amended complaint. *Id.* Mr. Carter filed the Amended Complaint on March 19, 2018, specifying the positions that Schnaufner, Moon, Moody, and Laird held vis-à-vis the Ideas for Dollars Program. ECF No. 16 ¶¶ 9, 14–16.

On April 2, 2018, the Government moved to dismiss Mr. Carter's Amended Complaint for lack of subject matter jurisdiction under RCFC 12(b)(1). Def.'s Mot. to Dismiss Am. Compl. at 1, ECF No. 17. It argues that Mr. Carter has failed to establish that Schnaufner, Moon, and Moody had the legal authority to bind the United States to an implied-in-fact contract. *Id.* at 3. To the extent that Mr. Carter relies on their authority to make an award under the Ideas for Dollars Program, the Government reasserts that the program is nothing more than an illusory promise and not the guarantee of an award. *Id.* In the alternative, the Government also highlights that Schnaufner, Moon, and Moody had authority to award Mr. Carter only $100 at most and that Mr. Laird could award him only $1,000 at most. *Id.* at 3–4. As such, the Government argues there is

5

no way that any of these individuals could bind the United States to the over $500,000 award that Mr. Carter seeks. *Id.* at 4.

## II. DISCUSSION

### A. Standard of Review

This Court must dismiss claims that do not fall within its subject matter jurisdiction. *See* RCFC 12(b)(1), 12(h)(3). When ruling on a motion to dismiss for lack of jurisdiction, a court must accept as true all uncontroverted factual allegations contained in the complaint and construe them in the light most favorable to the plaintiff. *See Stephens v. United States*, 884 F.3d 1151, 1155 (Fed. Cir. 2018); *see also Creative Mgmt. Servs., LLC v. United States*, No. 2020-1449, 2021 WL 745349, at *4 (Fed. Cir. Feb. 26, 2021) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). In the case of an individual proceeding *pro se*, a court should hold the plaintiff's complaint to "less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94; *see Jaye v. United States*, 781 F. App'x 994, 996 (Fed. Cir. 2019), *cert. denied*, No. 20-705, 2021 WL 78216 (U.S. Jan. 11, 2021). However, despite this tradition of leniency, *pro se* litigants are not exempt from meeting jurisdictional requirements. *See Jaye*, 781 F. App'x at 996 (quoting *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).

### B. Jurisdiction over the Breach of Contract Claim

The Tucker Act supplies this Court with jurisdiction over claims against the Federal Government founded upon the Constitution, an Act of Congress, a regulation of an executive department, or an express or implied contract. 28 U.S.C. § 1491(a)(1). To survive the Government's Motion to Dismiss for lack of subject matter jurisdiction, Mr. Carter has the burden to show compliance with the Tucker Act. *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1324 (Fed. Cir. 1997); *see Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.

Cir. 1988) (a plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence).

Here, Mr. Carter can do so by asserting a "well pleaded allegation of a breach of an express or implied-in-fact contract." *Bank of Guam v. United States*, 578 F.3d 1318, 1325 (Fed. Cir. 2009); *Trauma Serv. Grp.*, 104 F.3d at 1325 ("To show jurisdiction in the Court of Federal Claims, [the plaintiff] must show that either an express or implied-in-fact contract underlies its claim.")). Alleging an implied-in-fact contract requires "a meeting of [the] minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Trauma Serv. Grp.*, 104 F.3d at 1326 (quoting *Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996)). The Federal Circuit has "held that jurisdiction under this provision requires no more than a non-frivolous *allegation* of a contract with the government." *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (emphasis in original) (citing *Lewis v. United States*, 70 F.3d 597, 602, 604 (Fed. Cir. 1995)). Whether a contract *actually* existed—*i.e.*, whether a plaintiff has established all the elements necessary to the formation of a valid contract—is not a jurisdictional question.[3] *See id.* at 1354–55; *see also Gould, Inc. v. United States*, 67 F.3d 925, 929–30 (Fed. Cir. 1995) (holding that the government mischaracterized lack-of-authority argument as jurisdictional); *see Mendez v. United States*, 121 Fed. Cl. 370, 379 (2015) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [the plaintiff] could actually

---

[3] The elements of an implied-in-fact contract with the Government, as with an express contract, are: "(1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) 'actual authority' on the part of the government's representative to bind the government in contract." *Hanlin*, 316 F.3d at 1328.

recover.") (quoting *Do-Well Mach. Shop, Inc. v. United States*, 870 F.2d 637, 639 (Fed. Cir. 1989)).

For the reasons discussed below, Mr. Carter has sufficiently asserted a claim at the pleading stage that falls within this Court's jurisdiction because he alleges an implied-in-fact contract with the Government. While his submission of the Green Project proposal to the Ideas for Dollars Program would not, by itself, create a binding contract, the fact that the Government allegedly approved, utilized, and promised to pay him for the implementation of his idea may plausibly give rise to a implied-in-fact contract. Further, Mr. Carter alleged, based on regulations governing the program, that the Government's agents had authority to give him an award as high as $1,000 for his idea. Thus, the Court cannot dismiss his claim at this juncture.

          1.        <u>Whether Submission to the Ideas for Dollars Program Created a Contract</u>

In its first motion to dismiss, the Government contended that Mr. Carter's claim was meritless because submitting a suggestion through the Ideas for Dollars program does not create a contract. *Carter*, 2018 WL 651369, at *6. It argued that the program was nothing more than an illusory promise. *Id.* Per the program's governing regulations, the decision to utilize an inmate's idea and give a corresponding award appears discretionary. *See* 28 C.F.R. § 345.72 ("An inmate worker may receive a cash bonus or cash award for any suggestion or invention which is adopted by FPI . . . ."). Thus, the Government asserted that the only promise made to Mr. Carter was to consider giving him an award for his money-saving idea. *Carter*, 2018 WL 651369, at *6.

The court, however, understood Mr. Carter's Complaint to be asserting an implied-in-fact-contract claim based on the actions and representations of Schnaufner, Moon, and Moody. *Id.* Rather than alleging that a binding contract formed between him and the United States because he formally submitted an idea under the program, Mr. Carter's Complaint alleged that Schnaufner,

8

Moon, and Moody agreed to compensate Mr. Carter through the Ideas for Dollars Program. *Id.* (citing Compl. ¶ 15). In other words, it appeared from the facts pled that the "Ideas for Dollars Program was merely the vehicle by which Messrs. Schnaufner, Moon, and Moody would purportedly compensate Mr. Carter for implementing the Green Project." *Id*. Thus, the court rejected the Government's position that Mr. Carter was seeking the fulfillment of an illusory promise through the mere submission of his idea to the Ideas for Dollars Program. *Id.*

The Government renews its arguments regarding Plaintiff's inability to plead a binding contract based only on submission of an idea to the program. ECF No. 17 at 3 ("the program is not a guarantee of award, but only the promise to consider award" and thus "is an illusory promise"). If Mr. Carter were premising his contract claim solely on his submission of a proposal, then the Government would likely prevail. A host of cases have affirmed that where a suggestion is not adopted by the agency, an implied-in-fact contract entitling the employee, or in this case the inmate, to an award does not arise. Merely volunteering an idea does not bind the United States in contract. *See, e.g.*, *Cooley v. United States*, 76 Fed. Cl. 549, 556 (2007) (collecting cases).

Here, however, Mr. Carter has pled facts beyond simple submission of the Green Project idea to the Ideas for Dollars Program. As shown below, accepting these facts as true and liberally construing his pleading, Mr. Carter's Amended Complaint plausibly alleges an implied-in-fact contract that suffices to confer jurisdiction in this Court.

      2.      <u>Whether Approval and Use of the Green Project Idea Creates an Implied-in-Fact Contract</u>

Mr. Carter's allegation that the Government approved, utilized, and agreed to compensate him for his Green Project idea after he submitted it through the Ideas for Dollars Program gives him the grounds needed to allege a claim within this Court's jurisdiction. The Government does not dispute that Mr. Carter formally proposed his idea and that prison officials approved and

9

utilized the idea without paying Mr. Carter, despite an alleged agreement to compensate him. Instead, the Government contends that no contract formed because Schnaufner, Moon, and Moody had no authority apart from the Ideas for Dollars Program to bind the United States. ECF No. 17 at 2–4. The Government, however, ignores a long line of precedent holding that an implied-in-fact contract can potentially form when the Government approves and utilizes a suggestion from a formal awards program.

###### a.     *Precedent Regarding Awards Programs*

In *Martilla v. United States*, the Court of Claims first recognized the possibility that the Government's failure to pay an award to a civilian employee who submitted a formal, money-saving suggestion to the Government could be subjected to review. 118 Ct. Cl. 177, 181–82 (1950). Even though the statute implementing the awards program left "considerable discretion in deciding whether or not an award was justified," the court left open the possibility that an official's failure to fairly consider the merits of the award could be reviewable. *Id.* at 182. Over ensuing decades, the Court of Claims held that an abuse of discretion standard of review applied when reviewing meritorious awards program decisions. *See, e.g.*, *Shaller v. United States*, 202 Ct. Cl. 571, 596–97 (1973) (finding no abuse of discretion for an award of $300 based on intangible benefits from an idea); *Serbin v. United States*, 168 Ct. Cl. 934, 934–35 (1964) (determining that there was no abuse of discretion in awarding plaintiffs less than the maximum award permitted).

An important takeaway from these cases was that the Court of Claims found it had jurisdiction despite permissive and discretionary language in the statutes and regulations governing awards programs. For example, the governing regulations in *Shaller* stated: "The program provides incentive awards (cash and/or honorary) which *may* be granted" for superior job performance. 202 Ct. Cl. at 582 (emphasis added). Although this permissive language and other

provisions granted government agents a great deal of discretion in determining if an award was appropriate, the court concluded that it had jurisdiction to review the plaintiff's claim that he should have been awarded more money. *Id.* at 596–97. Only in a case where the plaintiff's proposal was rejected did the court note, in passing, that decisions about whether to grant an award might be unreviewable. *See Kempinski v. United States*, 164 Ct. Cl. 451, 453 (1964). Thus, from the beginning, the court distinguished between cases where an idea was acted upon from those where the submission was not acted upon.

Then, in *Griffin v. United States*, the Court of Claims recognized that an implied-in-fact contract can form when the Government utilizes a suggestion submitted to it via a formal rewards program. 215 Ct. Cl. 710, 714 (1978). In *Griffin*, the plaintiff entered a suggestion to an awards program and received an award. *Id.* at 711–12. He claimed that the amount was insufficient. *Id.* at 712. The Government contended that because the award was discretionary, the plaintiff had failed to allege the violation of a money-mandating provision. *Id.* at 712–13 (citing *United States v. Testan*, 424 U.S. 392, 402 (1976)). The Court of Claims acknowledged that a claim for a monetary allowance which "is wholly discretionary . . . cannot be the subject of a Tucker Act suit." *Id.* at 713 (citing *Grismac Corp. v. United States*, 556 F.2d 494, 499 (Ct. Cl. 1977)). Nevertheless, the court found that it had jurisdiction over the claim because implied-in-fact contractual obligations are cognizable under the Tucker Act. *Id.*

Specifically, the court highlighted how the Government had established guidelines and procedures for evaluating suggestions. *Id.* It then appropriated the plaintiff's proposed suggestion based on those guidelines and procedures. *Id.* at 714. By accepting and acting upon the plaintiff's idea, the Government became "bound by an implied contract" which "at a minimum, required [it] to establish plaintiff's compensation without abuse of discretion and within the guidelines [it] had

11

published." *Id.* Thus, the court concluded that while the Government initially had "uncontrolled and unreviewable discretion" in deciding whether to accept or decline a proposal, once it adopted and implemented the suggestion according to published procedures and guidelines, it then obligated itself not to abuse its discretion. *Id.* As such, because of this essentially contractual obligation, the court had jurisdiction to review the claim.

Subsequent cases both expound upon but also detract from *Griffin*'s logic. *See, e.g.*, *Cooley*, 76 Fed. Cl. at 557–58 (discussing "the somewhat murky body of case law" regarding whether the claim is reviewed as an abuse of agency discretion or a breach of contract); *McGee v. United States*, 5 Cl. Ct. 480, 481 (1984) (questioning whether *Griffin* can be reconciled with subsequent cases discussing if a law is money mandating). Nevertheless, *Griffin* and the earlier cases set an important marker which judges of this court have continued to follow. *See, e.g.*, *Ridenour v. United States*, 44 Fed. Cl. 202, 207 (1999) (reaffirming that an agency's use of an idea that was submitted through "a formal program that holds out a commitment to award, gives rise to enforceable expectations correctly described as an implied-in-fact contract"). Hence, it is possible for the submission and adoption of an idea through a formal rewards program to create a cognizable claim under the Tucker Act. The question is whether Mr. Carter has sufficiently pled facts asserting such a claim.

      b. *Application to Mr. Carter's Claim*

Alleging an implied-in-fact contract claim within this Court's jurisdiction requires Mr. Carter to plead facts showing "a meeting of the minds" between himself and the Government's agents, which can be inferred as a matter of fact from their conduct "showing, in the light of the surrounding circumstances, their tacit understanding." *Hercules*, 516 U.S. at 424. Under the prior case law, "the agency's adoption of an employee's suggestion" is what solidifies an implied-in-

fact contract. *Cooley*, 76 Fed. Cl. at 557; *see also Ridenour*, 44 Fed. Cl. at 207 (explaining that a formal awards program "is an invitation to submit offers which, if accepted by the agency, entitle the offeror to recognition that may include a cash award determined in accordance with published guidelines"). A claim alleging the existence of an implied-in-fact contract through a formal rewards program therefore requires, at minimum, demonstrating the government's use of the proposal. *See Anderson*, 73 Fed. Cl. at 201–02 (discussing how prior cases have generally held that "where a suggestion is rejected by the agency, an implied-in-fact contract entitling the employee to an award does not arise"). Here, Mr. Carter has alleged the Government used his Green Project idea, and more.

The Government contends that Mr. Carter has failed to allege facts demonstrating that Schnaufner, Moon, and Moody had general contracting authority—separate and apart from the Ideas for Dollars Program—to bind the United States. ECF No. 17 at 3. In the alternative, the Government asserts that any authority the agents had to make awards under the Ideas for Dollars Program did not include authority for the amount Plaintiff claims (*i.e.*, over $500,000). Schnaufner, Moon, and Moody could give an award of up to $100. *Id.* at 3–4; *see also* 28 C.F.R. § 345.73(b)(1). An award greater than $100 requires the permission of the Assistant Director, Mr. Laird, whose authority is likewise limited. ECF No. 17 at 3–4; *see also* 28 C.F.R. §§ 345.72, 345.73(b)(1). Either way, the Government argues that no valid contract formed because no one had contracting authority to bind the United States to the contract Mr. Carter alleges.[4] ECF No. 17 at 4.

---

[4] The Government does not assert the alleged implied-in-fact contract is invalid because it lacked mutuality of intent, consideration, or unambiguous offer and acceptance. Moreover, the Government does not contend that the contract could not have formed due to some misstep in following the regulations governing the Ideas for Dollars Program. Since a deficiency in following the program's procedures has not been made apparent, the Court shall presume at this stage that no such irregularities occurred. *See Ridenour*, 44 Fed. Cl. at 207 (absent allegations of a departure from the agency's established protocol the court assumed all actions taken complied with relevant

The Government, however, has completely overlooked the line of cases dealing with implied-in-fact contracts discussed above. Hence, this Court is left without argument as to why this case should be treated differently from other cases where the Government allegedly approved, implemented, benefited from, and agreed to give compensation for an idea submitted through a formal awards program.[5] Likewise, the Government does not contest that Schnaufner, Moon, Moody, and Laird together possessed the authority to make up to a $1,000 award. *See id.* at 3–4. As a result, this Court cannot agree that Mr. Carter's claim must be dismissed outright for lack of jurisdiction.

Based on *Griffin* and the subsequent line of cases discussed above, Mr. Carter sufficiently pleads a claim that the Government formed a plausible implied-in-fact contract with him. Mr. Carter asserts that he submitted his Green Project idea through an incentive awards program for prison inmates. *See* ECF No. 16 ¶¶ 9–26; *see also* 28 C.F.R. § 345.70. He alleges that Schnaufner, Moon, and Moody approved his proposal, instructed him to implement the idea, and directed him to keep a spreadsheet to monitor savings. *See* ECF No. 16 ¶¶ 18–21. He contends that the Government significantly benefited from his idea. *Id.* ¶¶ 26, 36. Yet, despite his submission through a formal program and the alleged approval of an award by Schnaufner, Moon, Moody, Laird, and other Assistant Directors, Mr. Carter has not been compensated. *Id.* ¶¶ 31, 35. Mr. Carter's submission of his Green Project idea through a formal awards program, under the

---

procedures). In any event, the Government does not move for dismissal of the Amended Complaint under RCFC 12(b)(6) and thus the Court does not endeavor at this time to determine whether Mr. Carter has stated a claim upon which relief may be granted.

[5] In addition to not addressing the *Griffin* line of cases, the Government provides no citation to authority or any substantial argument regarding why a promise to pay through the mechanism of a specific awards program—even where the agents otherwise have no general contracting authority—would not state a cognizable contract claim. *See* ECF No. 17 at 3–4.

supervision of government agents with authority to grant an award, and the Government's alleged use of his idea and promise of a cash award present sufficient factual allegations at this preliminary stage to support this Court's jurisdiction. *See Cooley*, 76 Fed. Cl. at 557.

Whether Mr. Carter is legally entitled to compensation is another matter. One issue that has troubled the court and its predecessor is whether it can review, let alone have jurisdiction over, an apparently discretionary decision to award money. *See Anderson*, 73 Fed. Cl. at 204 (discussing how regulations can reserve the agency's authority to give an award even if the agency appropriates the proposal). On a macro level, the doctrine has allowed for cases to proceed on the basis that these claims are implied-in-fact contracts rather than enforcing a money-mandating law. *See, e.g.*, *Griffin*, 215 Ct. Cl. at 712–14. This does not mean, however, that a plaintiff can expect to prevail against an agency that reserves to itself discretion in deciding whether to give an award— even when it utilizes the idea. *See Anderson*, 73 Fed. Cl. at 203–04 (holding that to state a viable claim "a contract must arise based upon an agency's procedures that hold out some prospect that an accepted suggestion will be met with an award"); *see also McGee*, 5 Cl. Ct. at 481–82 (questioning whether the court's jurisdiction extends to a regulatory regime where "an agency 'may' pay a cash award for employee suggestions").[6] The burden will lie with Mr. Carter to show, based on the regulations and any other guidelines, that an award payout was wrongfully withheld from him.

---

[6] Courts in prior cases have pointed to manuals or guidelines as essentially providing the terms for the implied-in-fact contract. *See, e.g.*, *Cooley*, 76 Fed. Cl. at 557 ("In all events, adoption of a suggestion, or provision of information, or other actions taken in accord with and reliance upon agency procedures may give rise to an implied-in-fact contract that incorporates those internal procedures."); *Ridenour*, 44 Fed. Cl. at 207 (discussing how a formal program with published guidelines creates "enforceable expectations" that the submission will be judged in accord with those guidelines). Whether such terms are necessary to the continued vitality of Mr. Carter's claim is a question that this Court shall leave for further analysis at a later stage.

The parties have not briefed the issue of whether the governing regulations give the Government discretion to refrain from giving an award, even if it utilized Plaintiff's idea and agreed to compensation. Thus, the Court will not endeavor to decide the merits at this time. But for the purpose of assuring itself that it has jurisdiction, the Court notes that several cases have found an implied-in-fact contract was alleged even where the governing provisions used the term "may." *See, e.g.*, *Merrick*, 846 F.2d 725, 726 (Fed. Cir. 1988) (assuming jurisdiction and determining that the plaintiff stated a claim for relief where the regulation provided that the agency "may approve such reward as [it] deems suitable" and the parties negotiated and fixed the amount of the reward). Indeed, recently another judge of this court reviewed a claim alleging the breach of an implied-in-fact contract by the Social Security Administration ("SSA"), where the governing incentive awards statute said that the "agency *may* pay a cash award" to an employee who provides an idea. *Cooley*, 76 Fed. Cl. at 556 (emphasis added) (quoting 5 U.S.C. § 4503). Relying on the several prior decisions discussed above, which involved statutes or regulations with "permissive language," *id.*, the court held that the plaintiff-employee could state an implied-in-fact contract claim falling within the court's jurisdiction because the SSA appropriated the plaintiff's suggestions and approved an award after submission through a formal awards program. *Id.* at 557.

This Court is likewise convinced that Mr. Carter has sufficiently pled an implied-in-fact contract claim due to the Government's alleged approval of, use of, and agreement to an award for his Green Project idea, which he submitted through the Ideas for Dollars Program.

    3.    <u>Whether the Government's Lack-of-Authority Argument Defeats Jurisdiction</u>

Previously the court ordered Mr. Carter to plead facts showing what, if any, contractual authority the various government agents had to bind the United States. *Carter*, 2018 WL 651369,

at *6. Mr. Carter's Amended Complaint alleges the precise authority Schnaufner, Moon, Moody, and Laird held under the relevant regulations.

Specifically, the regulation governing the procedure for submitting and reviewing ideas through the Ideas for Dollars Program provides that inmates shall submit written suggestions to their "immediate supervisor" who will then "review the suggestion and forward it with comments and award recommendation to the SOI." 28 C.F.R. § 345.73(a). Mr. Carter alleges that his immediate supervisor was Mr. Schnaufner, and the SOI was Mr. Moon. ECF No. 16 ¶ 14. His proposal was then allegedly considered "by a committee comprised of Industries personnel designated by the SOI." 28 C.F.R. § 345.73(b). Under the regulation, the committee "is authorized to award a cash award up to $100.00." *Id.* § 345.73(b)(1). According to the Amended Complaint, the committee convened included Schnaufner, Moon, and Moody. ECF No. 16 ¶ 15. Mr. Carter further alleges that Mr. Laird, who has authority to award up to a $1,000, and two other Assistant Directors directed Mr. Moon to ensure that Mr. Carter was compensated. *Id.* ¶ 31.

Despite the regulations, the Government contends that this Court lacks jurisdiction over Mr. Carter's claim because he has failed to demonstrate that Schnaufner, Moon, Moody, and Laird had authority to enter into a binding contract. ECF No. 17 at 3–4. As the court previously indicated, whether Mr. Carter's allegations, if proven, establish the requisite elements of an enforceable contract is a matter properly raised under RCFC 12(b)(6), not 12(b)(1). *Carter*, 2018 WL 651369, at *6; *see Gould*, 67 F.3d at 930. Moreover, although the Government is correct to the extent that Mr. Carter has not pled facts showing that any of these agents enjoyed general contracting authority, the regulations governing the Ideas for Dollars Program provide limited authority to these agents to give Mr. Carter a cash award for his idea. And as discussed above,

prior cases have recognized that such regulatory awards programs can give rise to an implied-in-fact contract claim under certain circumstances.

The Government also argues that the award limits of the Ideas for Dollars Program are at odds with Mr. Carter's allegations. ECF No. 17 at 3–4. The Amended Complaint alleges that Mr. Carter was offered and accepted compensation "at a rate of 1% of the total savings" resulting from the Green Project idea, which he alleges is over $500,000. ECF No. 16 ¶¶ 19–20, 45. The governing regulations similarly provide that cash awards under the Ideas for Dollars Program "shall be one percent of the net estimated savings during the first year." 28 C.F.R. § 345.72. The regulations, however, clearly impose caps on any award. 28 C.F.R. §§ 345.72, 345.73(b)(1). Based on the facts submitted to the Court, Schnaufner, Moon, Moody, and Laird together had the authority to grant Mr. Carter a monetary award of only up to $1,000. While this provides factual basis for Mr. Carter to plead a claim for breach of an implied-in-fact contract, the $1,000 is well short of the damages he originally alleged. *See* Compl. ¶ 57.

As a general matter, government agents cannot commit the federal government to implied-in-fact contracts by agreeing to compensate an individual for an amount above a statutory or regulatory limit. *See Sealey v. United States*, 71 Fed. Cl. 278, 282 (2006). In *Sealey*, two retired Marines challenged a $25,000 award they received under the Marine Corps' incentive awards program for their idea to improve the supply ship loading process. *See id.* at 279–80. The plaintiffs claimed that they were entitled to a higher award, notwithstanding governing statutory and regulatory limits. *Id.* at 280. Relying on *Griffin*, the Government argued that the court's jurisdiction was limited to claims of up to $25,000 (per the statute's limit) and thus the court could not review the plaintiffs' claim for an award beyond the statutory ceiling. *Id.* at 281 (citing *Griffin*,

18

215 Ct. Cl. at 715 n.1). The court in *Sealey* agreed and, since the plaintiffs had already received the maximum award, it dismissed their claim. *Id.* at 282–83.

Here, of course, Mr. Carter has not received the award the Government allegedly promised. As in *Griffin*, the $1,000 award limit of the Ideas for Dollars Program does not preclude this Court's jurisdiction over Mr. Carter's contract claim, but it does define the outer limit of his potential recovery. *See Griffin*, 215 Ct. Cl. at 715 n.1; *see also OAO Corp. v. United States*, 17 Cl. Ct. 91, 102–03 (1989) (holding that implied-in-fact contract existed between the Air Force and contractor for start-up costs, but was limited to the contracting officer's authority to enter into agreements up to $250,000). Whether the difference between the unlimited compensation allegedly promised to Mr. Carter and the limits on the Government's authority to make awards under the Ideas for Dollars Program ultimately proves that no contract formed is a question that can be properly decided at the merits stage. *See Mendez*, 121 Fed. Cl. at 379.

### III. CONCLUSION

Plaintiff has provided this Court with facts that non-frivolously allege an implied-in-fact contract that may entitle him to an award as high as $1,000. The Government has yet to give the Court a viable argument that justifies complete dismissal of Mr. Carter's claims on jurisdictional grounds. Thus, the Government's Motion to Dismiss this case for lack of subject matter jurisdiction is **DENIED**.

**SO ORDERED.**

Dated: March 16, 2021      */s/ Kathryn C. Davis*
                                     KATHRYN C. DAVIS
                                     Judge